GEORGE W. REHFUSS, Appellant, *vs.* JAMES W. HILL, Appellee.

*Opinion filed December 22, 1909.*

1. EVIDENCE—*what evidence in ejectment is properly stricken out as hearsay.* In ejectment, where a boundary line is in dispute, testimony of a witness that the defendant's building was partly on plaintiff's lot is properly stricken out, where it appears that such testimony is based entirely upon what surveyors who ran the line told the witness.

2. SAME—*when refusal to allow a witness to state what a deceased surveyor had told him is harmless.* In ejectment, involving a disputed boundary line between lots in a certain addition, alleged error in refusing to allow a witness to state what a certain deceased surveyor had told him with reference to a corner of the addition not directly involved in the suit is harmless, where the witness was allowed to testify, without objection, where such surveyor had located the corner.

3. SAME—*when admission of copies of deeds without preliminary proof being made is not harmful.* In ejectment, involving a disputed boundary, the admission of copies of deeds without preliminary proof being made is harmless, where the exact location of the lots described in the deeds has already been testified to by witnesses, so that the deeds furnished no additional information to that already in the record.

4. APPEALS AND ERRORS—*copies of exhibits should be made a part of the abstract of record.* Alleged error in admitting in evidence, in ejectment, certain exhibits, which appear to have been plats, cannot be considered on appeal, where copies of such plats are not made a part of the abstract of record.

5. EJECTMENT—*when refusal of an instruction as to effect of deeds and title papers is proper.* In ejectment, where the only question in dispute is the boundary line between the lots of the plaintiff and defendant, an instruction stating that the deeds and papers introduced by the plaintiff were sufficient to vest the legal title to the whole of the premises described in the declaration and to authorize the plaintiff to take possession of the entire lot is properly refused, as having a misleading tendency.

6. DEDICATION—*boundary line fixed by deed cannot be changed by making street improvements.* The boundary lines of a street as fixed by the deed of dedication cannot be changed by a city, for the making of street improvements or otherwise.

APPEAL from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

KING, BOGGESS & LEWIS, (JAMES A. CAMERON, of counsel,) for appellant.

SHEEN & DAVID, and EDWARD D. McCABE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an action in ejectment, brought in the circuit court of Peoria county, concerning a narrow strip of land between the lines claimed by appellant and appellee, respectively, as the division line of the two adjoining lots owned by them, in the city of Peoria. Trial was had before the court, jury being waived, and resulted in a finding of not guilty. This judgment was set aside and a new trial allowed under section 35 of the Ejectment act. (Hurd's Stat. 1908, p. 904.) A second trial was had before a jury, which resulted in a like finding. Appellant, who was plaintiff in the ejectment proceedings, now brings the record in this second trial before this court for review.

The declaration alleged that appellant owned a tract of land with a forty-foot frontage on Hamilton boulevard and running back along Crescent avenue ninety-one feet, being a part of lot 7 in block 9, in the second division of Pulsifer's addition to the city of Peoria, Illinois. A copy

of the plat of said second division as introduced in evidence is herewith given:

The street called Hamilton boulevard in the declaration is marked Hamilton street on the plat. Rights to an alley-

way are included in the real estate owned by each party. Appellee's deed calls for a tract of land adjoining appellant's land on the southerly side, having a frontage on Hamilton boulevard of thirty-seven and one-half feet and running back ninety-one feet, being a part of lots 7 and 8 in said block 9. On this land appellee has built a three-story brick-veneer flat-building, and it is claimed by appellant that while the building itself is all on appellee's land, the cornice overhangs the land of the appellant from twenty-nine to thirty inches. Appellee contends that the cornice does not extend or overhang any of the appellant's property according to proper measurements. He further contends that the testimony most favorable to appellant shows only that the cornice extends over on appellant's lot at the front of appellee's building fourteen and a half inches and twenty-six and a half inches at the rear. The question in this ejectment suit narrows itself down to the ownership of this small strip of land, such ownership depending on the proper location of the division line between appellant's and appellee's lots.

The land included in the addition in which these lots are situated is partly on the top or side of a bluff and partly on the lower land on the river side of Bluff street. Some question is raised in the briefs as to this fact, but we think it is clear from the evidence that the land lying northerly of Bluff street as platted is considerably higher than the land lying southerly of that street. On November 15, 1870, Sidney Pulsifer, who then owned the property platted in this addition, deeded to the city of Peoria a street then known as Bluff street and now called Glen Oak avenue. The deed described the land conveyed for the street as follows: "A strip of land sixty-six feet in width, extending through Pulsifer's addition to the city of Peoria from a point on the Knoxville road at the present termination of Bluff street, said strip of land sixty-six feet to extend through said Pulsifer's addition in a south-westerly

direction, parallel, or nearly so, with Hale street, and across Main street upon the same line, and to extend on south-westerly to the intersection of the line of Sandford street at a point near the land owned by Norman Howe. The river side of said strip of sixty-six feet where the same crosses Main street is bounded by a fence and brick abut-ment enclosing the premises known as the Bluff House. Said strip of land sixty-six feet wide is for the purpose of extending Bluff street and is to be known as Bluff street, and the same is hereby dedicated, bargained and sold to the said city of Peoria for a public street." Pulsifer's said second division was not platted until May 27, 1878, nearly eight years after the dedication of this street. Pulsifer's addition referred to in this deed was laid out before the deed was executed. The Bluff House referred to in this deed was situated at the corner of Bluff and Main streets, on lot 8 in block 3, as shown on the above plat, block 3 being on the river side of said Bluff street. Hamilton and Main streets run practically north-west and south-east and Bluff and Hale streets practically north-east and south-west. Both parties seem to concede that the original loca-tion of Bluff street, if it can be ascertained, must control over the plat when they are in conflict.

Appellant insists that the evidence in this record shows that Bluff street was not originally laid out on a straight line, but that it jogged or curved in crossing Main street. While appellee insists that it is not necessary for a decision of this case to decide whether Bluff street was by this deed dedicated throughout its length as having straight lines, he argues that everything in this record tends to show that Bluff street was laid out with its side lines straight, and not curved or jogging at Main street.

Several witnesses for appellant testified as to the origi-nal location of the brick abutment or wall enclosing the Bluff House. Some of these were old residents, who stated that this wall was partially torn down some forty years

ago and re-constructed as a concrete abutment or wall on the same line. At the time the deed was executed dedicating Bluff street, it appears that the grade of the street at the Bluff House was several feet higher than the foundation of that building, and that the brick abutment or wall ran up from the grade of the foundation of the building a little above the grade of the street as then constructed. Since that time this lot has been filled up, and it is claimed by appellant that the wall, in its old location, was covered by the filling. At the time of the last trial a hole was dug on Bluff street about twenty feet east of Main street and an old concrete wall found. The testimony of appellant tended to show that this wall was in the same place as where the brick abutment originally stood. Appellant contends that this concrete wall is the correct southerly boundary line of Bluff street at this point, and that measuring from it his contention as to the proper boundary line between the lots in question must be sustained. A Mrs. Powell testified that in 1876 she and her husband, now deceased, purchased lot 1 in block 9, immediately across the street from the Bluff House, and that Pulsifer himself superintended the survey of this lot; that at that time there was constructed on the westerly side of said lot on Main street and on the southerly side on Bluff street, an iron fence on the lot line following that survey; that this fence has never been changed. The distance between this fence and the concrete abutment across the street is substantially sixty-six feet, and appellant contends that this fact further corroborates his contention as to the correct line of Bluff street at this point. County surveyor Dunn, of Peoria county, testified for appellant that in 1898, in company with the then city engineer of Peoria, he made a survey of this locality, and they found at the north-west corner of lot 6 in said block 9, at Main street and Crescent avenue, a stake about a foot and a half to two feet below the surface of the ground; that at first they were in doubt as to whether

it was a surveyor's stake, but after a search along the southerly line of Crescent avenue they found two stakes at or near the northern boundary line of lots 1 and 2 in block 15, and all three of these stakes being very similar, they finally concluded that all three were the original stakes set by the surveyor who made the plat here in question. Surveyor Dunn further testified that measuring from these stakes the lot lines of appellant's property would be located substantially as they would if the measurement of block 9 was made taking the old concrete abutment at the corner of Bluff and Main streets as the southern boundary·line of Bluff street. ·

Appellee contends that there is no clear proof that the abutment found below the ground at Bluff street near Main street is in the original location of the brick abutment referred to in the dedication deed, and he further insists that no attempt was made to dig down and find the abutment at the corner of Main and Bluff streets, but twenty feet away from that point, hence he argues that it cannot be inferred that the concrete wall would necessarily be found on the same line at the exact corner as it was twenty feet away. He further contends that the evidentiary force of the finding of the concrete wall at the point in question is greatly weakened in its bearing on this case from the fact that many years ago a building was erected on lot 17 in block 3, the front walls of which are not on a line with the concrete wall found in front of the location of the old Bluff House; that the cornice, a cupola and areaway of this property on block 17 extends about three and a half feet further north than does the old concrete wall found below the ground just west of it, his argument being, that if this old concrete wall was erected exactly on the lot line, the owner of lot 17 would certainly not have located his building three and a half feet in the street beyond the lot line. Appellee further contends that no reliance can be placed upon the evidence that the stakes found by surveyor Dunn

along Crescent avenue were the original surveyor's stakes. To support this contention he introduced evidence that the owner of lots 1 and 2 in block 15 in 1881 or 1882 excavated the end of those lots along Crescent avenue seven or eight feet at the point in question where two of the stakes were found, and that some years later, and before the county surveyor found these stakes, the grade of Crescent avenue was changed at this point. This evidence as to grading down said lots 1 and 2 and changing the grade of the street is uncontradicted. Appellee therefore insists that when these lots were excavated the original stakes must necessarily have been disturbed, and that it is more reasonable to conclude that the stakes found by the county surveyor at this point were the grade stakes which were placed there by those who were doing the grading than that they were the original surveyor's stakes. If this contention as to these two stakes be upheld, naturally no great reliance can be placed upon the first stake found by the county surveyor.

Three surveyors testified for appellant. They do not all agree as to the exact location of the boundary line between the lots in question. Four surveyors testified for appellee. One of them was the son-in-law of appellee, and counsel on the other side insist that his testimony was influenced by that fact. Appellee testified also for himself on this subject, stating that he himself had studied mechanical engineering and had been a master mechanic for years on railroads, and believed himself competent to make a proper survey. The surveys for appellee were based quite largely upon measurements starting from the north-west corner of said plat, at North and Chambers streets. These surveys were made somewhat more complicated from the fact that the stone which the certificate accompanying the plat stated was placed at the north-west corner "for future reference" is no longer there and its original location has to be estimated from other points, besides which the east line of North street, which runs along the west edge of this ad-

dition, is apparently five feet further east at this point than it is in the block further south. In addition to the other difficulties, the dimensions of several lots are not given on the plat along which this measurement must be made. These five witnesses all testified that according to their surveys appellee's building, including the cornice, was entirely within his lot line, giving a small distance to spare between the edge of the cornice and the southerly lot line of appellant.

Appellee offered proof that if the three stakes found by the county surveyor be taken as the starting point from which to measure, not only the boundary lines of the lots in block 9 but in practically every block in the addition, as well as the streets as now laid out and improved, would be found to be incorrect. Counsel for appellant, as we understand their argument, practically concede this as to the lots and blocks west of Main street, but insist that if Bluff street jogs or bends in crossing Main street their proof would disarrange the present lot lines and street improvements less than would the surveys for appellee.

It is impossible in deciding this case to set out all the details of the very voluminous testimony heard on the trial as to the proper location of the lot and street lines in this addition. Apparently there is an irreconcilable conflict in the evidence on many of the disputed questions of fact. Manifestly, Bluff street as now built up and improved does not correspond with the block and lot lines as they appear on the plat heretofore set out. Several of the experts who testified stated the measurement and location of some, if not all, lines as marked on the plat did not correspond with the actual distances measured on the ground. We are disposed to think the evidence supports this conclusion. Whether this results from improper measurements on the ground at the time the addition was platted, or from improper lines or figures being marked on the plat, or from a failure to lay out the streets and make the measurements along them in

accordance with the plat, or for all or any of these reasons, we cannot from the evidence in this record decide. The evidence tends to show that Bluff and Hale streets as actually located and improved are not parallel for the entire distance across this plat. The figures as to the size of the lots given on the plat do not conclusively prove whether it was intended to have them parallel as platted. The wording of the deed of dedication on this point as to Bluff street reads, "parallel, or nearly so, with Hale street," thus intimating that at that time the streets were not absolutely parallel. There is nothing, however, to indicate from the plat, or any other proof in the record, that said Bluff street, when dedicated, was not to be a straight street across the entire addition, except the fact that certain improvements built along this street could not be within the lot lines and the street be straight. We cannot say, on the disputed questions of fact, that the evidence in the record preponderates in favor of appellant. It is of such a nature that the decision as to the division line between the lots of appellee and appellant was peculiarly one for the jury and the trial court. The most that can be said in favor of appellant's contention is, that the evidence was so conflicting that it was important that the rulings of the trial court on the admission and exclusion of evidence and the instructions to the jury should be accurate.

Counsel for appellant contend that the court improperly struck out certain of the testimony in which the witness stated that the appellee's building was partly on the appellant's property. It appeared that this evidence was based entirely upon what the surveyors who ran the lines had told the witness. We think the court rightly struck out this as a conclusion based upon the statements of the surveyors.

Appellant further contends that the court erred in refusing to allow witness Gift to testify what surveyor Allen had years before told him with reference to a certain corner in this addition not directly involved in this proceed-

ing. It appears that at the time of this hearing surveyor Allen was dead, and that what he stated to this witness was the result of a survey he was then making. Whether the trial court's ruling on this evidence was correct or not, appellant was not injured, as the same witness was permitted, without objection, to testify where surveyor Allen located the corner in question. The conclusion is inevitable that he located the corner where he told the witness it should be located.

Appellant further contends that the court erred in refusing to allow witness Partridge to testify as to certain statements of one Dr. Johnson. It is insisted that these statements had a bearing as to the southern boundary line of Bluff street in front of said lot 17. It was not shown that Dr. Johnson was dead or that he could not be obtained as a witness. Furthermore, the evidence was not material, as the offer as shown in the abstract was not to prove where the lot line was on the street, but only why Dr. Johnson located his building on the front of the lot instead of on the rear.

The further contention is made that the court erred in permitting copies of deeds to be admitted in evidence referring to certain lots on and near Bluff street in this addition without the preliminary proof being first made, as provided by statute. While we think the court erred in permitting these copies to be introduced without this preliminary proof, we cannot see in what way the introduction of these copies harmed appellant. The exact location of these lots had been described by witnesses without objection before the copies of the deeds were introduced. These deeds did not furnish any additional information to that already in the record.

The further objection is made that the court erred in admitting for appellee exhibits 11 and 12. These exhibits appear to have been plats of a part of block 9 and some of its surroundings. We are disposed to think that under

the authorities these plats were admissible for the purpose of explaining the testimony of the surveyor who made them. (*Justen* v. *Schaaf,* 175 Ill. 45; *Wahl* v. *Laubersheimer,* 174 id. 338; *Seidschlag* v. *Town of Antioch,* 207 id. 280; *Duggan* v. *Ryan,* 211 id. 133; 9 Am. & Eng. Ency. of Law,—2d ed.—900, and cases cited; 17 Cyc. 412, and cases cited.)   Be that as it may, appellant is in no position to raise this question.   Copies of these exhibits were not made a part of appellant's abstract.   Our rules require that an abstract "must be sufficient to fully present every error and exception relied upon." (235 Ill. p. 14.)   It is impossible from the abstract, without copies of the plats, to say whether there is any merit in the objections of appellant as to the admission of these plats.   It is the duty of parties bringing cases here for review to file complete abstracts of the record, in accordance with the rules, of every point which they wish to present to this court.   *Gibler* v. *City of Mattoon,* 167 Ill. 18; *Lasher* v. *Colton,* 225 id. 234.

Appellant further contends that the court erred in refusing to give an instruction for him which, in effect, held that the deeds and papers introduced by him were sufficient to vest in him the legal title to the whole of the premises described in the declaration and to authorize him to take possession of the entire tract of land.   There is no dispute in the record as to the fact that appellant's deed gave him all the premises that were conveyed to him by the deed. The only question in dispute on this trial was as to the southern boundary line of his premises.   The refusal of this instruction could not have harmed appellant on the disputed questions of fact submitted to the jury, and as it was worded it might have had a tendency to lead the jury to believe that the court intended thereby to say to them that the boundary line contended for by appellant was the correct one.   The authorities to which our attention has been called by appellant are not in point.   The question in dispute in those cases was not as to boundary lines, but which

of two persons having deeds to the same piece of property had the better title.

It is further insisted by the appellant that instruction 2 given for appellee was erroneous in that it tended to lead the jury to believe that they could fix the lines of the property in question regardless of the evidence as to the survey stakes. This instruction took the brick abutment at the corner of Main and Bluff streets as the starting point for measuring Bluff street sixty-six feet wide and the lots in block 9 of the width shown on the plat. This is in full accord with the chief argument of appellant, as we understand his theory. We do not see how it could have injured him.

It is further argued that instruction 3 given for appellee is erroneous in that it tells the jury that the plat of this addition, as an entirety, is not to be considered by them for any purpose. On this point this instruction states that the line of Hale street determines the line of Bluff street where Bluff street crosses Main street, and that the lower side of Bluff street at Main street, as fixed by the fence and brick abutment in question as located when Bluff street was dedicated, should control in fixing the lower line of Bluff street rather than any survey starting from Globe street or any other point. In this connection the objection to appellee's fourth instruction may properly be considered. It is insisted that this latter instruction is incorrect because it states that Bluff street is to cross Main street "on the same line with Hale street." Counsel argue that this instruction is not in accord with the contention of either of the parties to this suit. The deed dedicating Bluff street states that it shall extend "in a south-westerly direction, parallel, or nearly so, with Hale street, and across Main street upon the same line," etc. The jury, in our judgment, would put the same meaning on the wording of this instruction that they would place upon the wording in the deed of dedication. Objection is also made to the latter part of instruction 4 because it stated that any surplus or

deficiency in the lots or blocks in this plat southerly of Bluff street could not affect the size of the lots or blocks northerly of Bluff street, if in so doing it would be necessary to locate Bluff street differently from what it was originally located by the dedication deed. Instructions 3 and 4 are not aptly worded, but in view of the wording in the dedication deed we cannot see, on the facts in this case, that they misled the jury as to the law.

It is further objected that instruction 5 given for appellee was erroneous in that it refers to "Exhibit F" as a plat, when, as a matter of fact, "Exhibit F" was the dedication deed of Bluff street, and for the further reason that the instruction refers to the second division of Pulsifer's addition as made by the "trustees of Pulsifer." Pulsifer was going through bankruptcy at that time and this plat was executed by his trustee. These inaccuracies in this instruction were not injurious to appellant.

It is further objected to the ninth instruction for appellee that it was erroneous in stating that the line of Bluff street as fixed and determined by the dedication deed could no more be changed by the city, for street improvements or otherwise, than by an individual. The instruction on this point stated the law correctly.

Additional objections to these and other instructions are of such minor importance as to require no consideration or have been practically disposed of by what has already been said. It is contended that some of the instructions are abstract and that others are not based on the evidence; that others single out particular facts or are ambiguous, and thus tend to confuse the jury. Some of the instructions are not strictly accurate, but a court of review should not always reverse a case because some of the instructions are not technically correct. Taking all the instructions together, we think the jury were not misled.

We find no reversible error in the record, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*